# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| BEAANN AVILA,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | No. ED CV 18-245-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## PROCEEDINGS

Plaintiff filed this action on February 1, 2018, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on February 22, 2018, and March 9, 2018. Pursuant to the Court's

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

Order, the parties filed a Joint Submission (alternatively "JS") on December 17, 2018, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

II.

**BACKGROUND**

Plaintiff was born on May 25, 1966. [Administrative Record ("AR") at 148, 671.] She has past relevant work experience as a home health aide, as a nurse aide, and as a retail department manager. [AR at 565-66.]

On May 14, 2015, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since September 15, 2014. [AR at 138; see also AR at 671-78.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 600-01.] A video hearing was held on May 23, 2016, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 543-71.] A vocational expert ("VE") also testified. [AR at 565-69.] On September 19, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from September 15, 2014, the alleged onset date, through September 19, 2016, the date of the decision. [AR at 138-50.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 670.] When the Appeals Council denied plaintiff's request for review on January 17, 2018 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

B.  **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 15, 2014, the alleged onset date.[2] [AR at 141.] At step two, the ALJ concluded that

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2018. [AR at 141.]

4

plaintiff has the severe impairments of mild residual left hemiplegia secondary to traumatic brain injury in 1984; asthma; obesity; chronic sinusitis; and degenerative tearing of the right hip. [Id.] He further determined that plaintiff's medically determinable physical impairments of diabetes mellitus and "diffuse strains/sprains of the back, neck, and bilateral shoulders," were not severe. [AR at 142.] He also found that plaintiff's sleep apnea is not a medically determinable impairment due to a lack of objective evidence. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] as follows:

> [C]an lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand and walk [sic] in an eight hour workday with normal breaks; she can sit for six hours in an eight hour workday with normal breaks; she can frequently push and pull with the left upper extremity; she can frequently climb ramps and stairs, and ladders, ropes, and scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl; and she must avoid concentrated exposure to fumes, dusts, gases, and poor ventilation.

[AR at 143.] At step four, based on plaintiff's testimony and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform her past relevant work as a home health aide, as a nurse aide, and as a retail department manager. [AR at 148, 565-67.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "electronics worker" (Dictionary of Occupational Titles ("DOT") No. 726.687-010), as a

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"small products assembler" (DOT No. 706.684-022), and as a "ticket taker" (DOT No. 344.667-010). [AR at 149, 567.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 15, 2014, through September 19, 2016, the date of the decision. [AR at 150.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he evaluated the opinion of plaintiff's treating physician, Tobias Moeller-Bertram, M.D. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

A.  **LEGAL STANDARD**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the

---

[5] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

6

claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

## B. DR. MOELLER-BERTRAM

In June 2016, Dr. Moeller-Bertram, plaintiff's pain management specialist, completed two different forms[6]: (1) on June 14, 2016, he completed a Treating Source Statement -- Physical Conditions ("Statement") [AR at 1375-78]; and (2) on June 21, 2016, he completed a "Listings Questionnaire" ("Questionnaire"). [AR at 1382-89.]

In the Statement, Dr. Moeller-Bertram stated that Manzoor Kazi, M.D., FACD, a board-certified internist, had been treating plaintiff for over three years. [AR at 1375.] It was noted that plaintiff had been diagnosed and treated for severe asthma/COPD. [Id.] In the Statement, Dr. Moeller-Bertram indicated plaintiff had the following limitations:

- she is likely to be off task for 25% of a typical workday;
- she will be absent, on average, four or more days per month;
- she can rarely lift or carry ten pounds, and never lift twenty pounds;
- she can sit for a total of 1 hour in an 8-hour workday;
- she is unable to stand or walk for long periods or distances;
- she requires the option to sit/stand at will;
- she does not require the use of an assistive device to ambulate effectively;
- she can occasionally reach and frequently push/pull with her left arm/hand due to her left-side paralysis and numbness in her "whole body, and hands fall asleep";
- breathing difficulty limits the effort and strength she can use in her movements;
- she can only occasionally use foot controls due to the fact that her left side balance and strength are limited due to her prior paralysis;
- she can only occasionally climb stairs and ramps, balance for 10 seconds, stoop, and crawl, and rarely climb ladders and scaffolds, kneel, or crouch due to knee pain;
- she can never be around unprotected heights, humidity and wetness, dust/odors/fumes/pulmonary irritants, or extreme heat; and
- she can rarely be exposed to vibrations, and occasionally to moving mechanical parts.

---

[6] Both documents appear to have been completed by Daniela Schellenberg, a Movement Therapist (or Specialist), and co-signed by Dr. Moeller-Bertram. [AR at 1378, 1389.]

8

[AR at 1376-78.]

In the Questionnaire, Dr. Moeller-Bertram stated that he had been treating plaintiff since September 24, 2015, and that plaintiff was seen weekly for her pain management needs. [AR at 1382.] He stated that plaintiff's diagnoses were lumbar radiculopathy; low back pain; diabetes mellitus; rule out lupus; severe asthma; and a pelvic deformity was noted. [Id.] He indicated that plaintiff's symptoms included pain with sitting, standing, and walking; she is a high fall risk; and she suffers from chronic fatigue. [Id.] He described plaintiff's pain as moderate to severe when performing her activities of daily living, and with walking, standing, and sitting she experiences pain to her low back that radiates bilaterally to her "lower extremities and pain to all joints." [Id.] Dr. Moeller-Bertram stated that the clinical findings and objective signs that supported his findings include MRI reports of plaintiff's hip showing "osteophytosis of the acetabulum and noted degenerative tearing." [Id.] He also noted "degenerative changes to both shoulders with tendinous calcification." [Id.] Dr. Moeller-Bertram provided further information relating to plaintiff's conditions:

- her medications cause fatigue and dizziness;
- she is seen weekly for acupuncture, chiropractic adjustments, and movement therapy;
- her impairments are reasonably consistent with the symptoms and functional limitations described in the Questionnaire;
- her pain or other symptoms is severe enough to constantly interfere with attention and concentration;
- she meets or equals the Listing for asthma, and was recently intubated after a "severe asthma attack -- COPD exacerbation [with] bronchitis";
- on March 30, 2016, she was admitted "for acute respiratory failure related to severe asthma exacerbation" and was intubated from March 30, 2016, through April 1, 2016;
- she is able to walk approximately 1.5 city blocks without rest or severe pain;
- she can "*continuously* sit and stand *at one time*" (emphasis in original) more than 2 hours;
- in an eight-hour workday she can sit a total of at least six hours and stand/walk a total of about four hours;
- she needs to include periods of walking approximately every fifteen minutes for

9

- about a ten minute period;
- she needs to be able to shift positions at will;
- she needs to take approximately four unscheduled breaks of about ten minutes each during an eight-hour workday;
- she can occasionally lift and carry ten pounds and never carry twenty pounds;
- she is likely to be absent from work more than four times a month;
- she needs to avoid temperature extremes, wetness, humidity, dust, fumes, gases, or hazards; and
- she needs to avoid sitting too long without moving.

[AR at 1383-84, 1388-89.]

The ALJ found that Dr. Moeller-Bertram's Statement and Questionnaire "ha[ve] no probative value because [they are] not supported by any objective evidence":

> These checklist-style forms appear to have been completed as an accommodation to [plaintiff] and include only conclusions regarding functional limitations without any rationale for those conclusions. In the treating source [S]tatement form, Dr. Moeller-Bertram rated [plaintiff] could not sit for more than one hour in a workday, was unable to stand, and was unable to walk for long periods of distance. Based on these limitations, he opined [plaintiff] could not complete an eight-hour workday. In the listings [Q]uestionnaire, which was completed only one week after the first form, he opined [plaintiff] could stand and walk for about four hours in an eight hour workday and was capable of sitting for six hours in an eight hour workday, but would miss more than four days of work per month as a result of her impairments. These medical source statements, which the undersigned has noted were completed only one week apart, provided wildly inconsistent stand, walk, and sit functional limitations, which undermined the determinations of this physician in general. Moreover, the sit, stand, and walk limitations assessed in the treating source [S]tatement were not supported by objective diagnostic evidence, which only showed mild-to-moderate degenerative changes of [plaintiff's] hips but no more significant degenerative changes that would support these limitations. Moreover, Dr. Moeller-Bertram's opinion that [plaintiff] would miss more than four days of work per month were [sic] not supported by treatment records. Although [plaintiff] had occasional asthma attacks that may require her to miss work, there was no evidence of consistent asthma symptoms throughout the adjudication period that supported this physician's opinion. [Plaintiff's] orthopedic issues would also not cause her to miss work with the frequency in which this physician opined.

[AR at 148 (citations omitted).]

Plaintiff submits that the reasons given by the ALJ for rejecting Dr. Moeller-Bertram's opinions -- (1) they are in a checklist style; (2) they provide wildly inconsistent stand, walk, and sit functional limitations; (3) the stand, walk, and sit functional limitations are not supported by the objective evidence; and (4) four days of absenteeism per month is not supported by the treatment

records -- are legally insufficient. [JS at 6.]

Generally parroting the ALJ's stated reasons for rejecting Dr. Moeller-Bertram's opinions, defendant submits that those reasons were supported by substantial evidence. [JS at 12-14.]

### 1. Checklist-style Forms

An ALJ is "not entitled to reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." Trevizo, 871 F.3d at 677 n.4. Thus, to the extent the ALJ discounted Dr. Moeller-Bertram's opinion because it was in a check-the-box form, he still needed to provide specific and legitimate reasons to discount that opinion.

On their face, the two documents in question refute the ALJ's finding that the forms provided functional limitations "without any rationale" for those conclusions. For instance, the Statement reflects plaintiff's three-year treatment with Dr. Kazi for her severe asthma/COPD, and provides specific information supporting the assessed limitations such as "left side paralysis," "breathing difficulty," numbness in her hands and body, and "knee problems." [AR at 1376-78.] Similarly, the Questionnaire reflects plaintiff's long-term pain management needs and treatment, her severe asthma, and her diagnoses of lumbar radiculopathy, low back pain, diabetes mellitus, rule out lupus, pelvic deformity, and pain to all joints. [AR at 1382.] It also specifically states that Dr. Moeller-Bertram's opinions were based on (1) MRI reports that reflect (a) osteophytosis of the acetabulum; and (b) adjacent degenerative tearing of the anterior superior labrum; (2) degenerative bilateral shoulder changes with tendinous calcification; (3) plaintiff's weekly treatment with a variety of treatment modalities including acupuncture, chiropractic adjustment, and movement therapy in addition to medication treatment; and (4) a recent hospitalization for acute respiratory failure. [AR at 1382-88.]

Accordingly, the ALJ's suggestion that Dr. Moeller-Bertram's "checklist-style" opinions were not supported by any rationale for his suggested limitations, was not a specific and legitimate

reason to discount those forms.

### 2. "Wildly Inconsistent" Stand, Walk, and Sit Functional Limitations

The ALJ stated that the stand, walk, and sit assessments stated by Dr. Moeller-Bertram in the two forms were "wildly inconsistent." [AR at 148.] Plaintiff compared the two assessments and argues that the two "show some type of difference but certainly not 'wildly.'" [JS at 8.] She also notes, however, that although the sit, stand, and walk assessments are different, the information sought by the two forms also was different. [JS at 8 (comparing AR at 1376 to AR at 1388).] She further observes that there were other assessed limitations that were not inconsistent, including the lifting/carrying, the need to sit/stand at will, and anticipated absenteeism. [Id.]

Defendant simply restates the ALJ's finding that the sit, stand, and walk assessments were "wildly inconsistent," and notes that an ALJ may disregard a treating physician's opinion when it is internally contradictory. [JS at 12-13 (citation omitted).]

The Court finds that the information sought by the Statement relating to plaintiff's ability to sit, stand, or walk, was different from the information sought by the Questionnaire. The Statement asked Dr. Moeller-Bertram to estimate how many "total hours in an 8 hour work day" plaintiff could sit, stand, or walk. [AR at 1376.] Dr. Moeller-Bertram indicated that plaintiff could sit for 1 total hour in an eight-hour workday. [Id.] He also stated that plaintiff was unable to stand or walk for either long periods or distances, but did not provide an estimate of the "total hours" she could either stand or walk. [Id.] In contrast, the Questionnaire specifically asked Dr. Moeller-Bertram for his opinion as to how long plaintiff "can *continuously* sit and stand *at one time*," and Dr. Moeller-Bertram opined that plaintiff could sit or stand *continuously* more than two hours. [AR at 1388 (emphasis in original).] The Questionnaire also asked for an opinion as to "how long [plaintiff] can sit and stand/walk *total in an 8 hour working day* (with normal breaks)." [AR at 1388 (emphasis in original).] Dr. Moeller-Bertram opined that plaintiff could sit for "at least 6 hours" and stand or walk "about 4 hours." [Id.] In both forms, he indicated that plaintiff would need to

alternate positions at will, and in the Questionnaire he also indicated she must frequently stand up and walk around during an eight-hour workday, and that she should not "sit[] too long without moving." [AR at 1388, 1389.]

The Court agrees with plaintiff that these forms are not "wildly" inconsistent as characterized by the ALJ, and that the alleged differences can generally be explained by the differences in the wording of the items. Dr. Moeller-Bertram's opinions "must be 'read in context of the overall diagnostic picture'" drawn by the provider. Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014).

This was not a specific and legitimate reason to discount Dr. Moeller-Bertram's opinion.

### 3. Objective Evidence

The ALJ also stated that Dr. Moeller-Bertram's opinions were not supported "by objective diagnostic evidence, which only showed mild-to-moderate degenerative changes of [plaintiff's] hips but no more significant degenerative changes that would support these limitations." [AR at 148.]

Plaintiff argues that Dr. Moeller-Bertram is certified as a pain management specialist and Chief Medical Officer at the Desert Clinic Pain Institute and that he is in the best position to render an opinion regarding plaintiff's impairments. [JS at 9.] She also notes that in finding that Dr. Moeller-Bertram's opinions were not supported by objective diagnostic evidence that showed only "mild-to-moderate degenerative changes of [plaintiff's] hips", the ALJ failed to even mention the fact that in addition to degenerative changes in plaintiff's hips, a diagnostic report had also shown degenerative tearing of the anterior superior labrum.[7] [Id. (citing AR at 331-32).] In response, defendant again only parroted the ALJ's finding, and submitted that the ALJ had "explicitly addressed" the degenerative tearing. [JS at 14 (citing AR at 146, 332).] Defendant noted that an ALJ may discredit a treating physician's opinion that is "conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." [JS at 13 (citation omitted).]

---

[7] This latter condition was found to be a severe impairment by the ALJ. [AR at 141.]

13

The ALJ's discussion of the treatment records contradicts his finding that the objective diagnostic evidence does not support Dr. Moeller-Bertram's opinions. Indeed, the ALJ discussed other treatment records dated between June 22, 2015, and September 21, 2015, which he noted reflected the following: pain with external and internal rotation with diminished range of motion and pain with deflection; early signs of bilateral hip osteoarthritis, left greater than the right, and injections were suggested to alleviate pain; the initial physical therapy examination reflected that plaintiff could not stand for more than 15 minutes because of pain and she had severe pain during initial ranges of active hip extension, moderate pain during mid ranges of active hip flexion, and moderate-to-severe pain with flexibility testing; plaintiff's hip strength was 2/5 throughout her treatment; and a physical therapy examination on September 21, 2015, "showed no improvement in the previously mentioned signs and limitations" exhibited by plaintiff. [AR at 146 (citing AR at 1175-78, 1182-85, 1203-07, 1343-44, 1354-55).] Indeed, the records from the Desert Clinic Pain Institute (where Dr. Moeller-Bertram is the Chief Medical Officer), dated between September 24, 2015, and March 2016 [AR at 1244-1319], also reflect similar findings, as well as moderate pain with left and right shoulder rotation; moderate pain with lumbar spine range of motion; moderate tenderness to palpation of the bilateral lumbar facet joints; and several instances of positive straight leg raise test results bilaterally. [AR at 1250, 1278]. During that period, the treating provider recommended a trial of epidural injections and noted that plaintiff's "presentation, exam and MRI are all consistent with radicular spinal pain condition, likely nerve root involvement from degenerative disk disease noted on the MRI," and that she had failed "a reasonable tr[ia]l (longer than 4 weeks) of other more conservative measures including physical therapy and medications containing NSAIDS." [AR at 1251.] Additionally, although as argued by defendant the ALJ generally noted that "[o]n September 30, 2015, an MRI study of [plaintiff's] hips showed bilateral hip mild marginal osteophytosis of the acetabulum with adjacent degenerative tearing of the anterior superior labrum" [AR at 146], in discussing his finding that Dr. Moeller-Bertram's opinions were not supported by objective diagnostic evidence, the ALJ only generally noted "mild-to-moderate degenerative changes" in plaintiff's hips and did not *specifically* mention either the

osteophytosis of the acetabulum or the degenerative tearing of the anterior superior labrum. [AR at 146.]

Thus, not only does the clinical MRI reflect more "issues" than acknowledged by the ALJ when he found that the MRI study did not support Dr. Moeller-Bertram's sit, stand, and walk limitations as it "only showed" mild-to-moderate degenerative changes of plaintiff's hips "but no more significant degenerative changes that would support these limitations" [AR at 148], but the treatment records also provide support for Dr. Moeller-Bertram's findings. This was not a specific and legitimate reason to reject Dr. Moeller-Bertram's opinions.

### 4. Absenteeism

The ALJ rejected Dr. Moeller-Bertram's opinion that plaintiff would miss more than four days of work per month because it was "not supported by the treatment records." [Id.] He noted that plaintiff's "occasional" asthma attacks may require her to miss work but there was no evidence of consistent asthma symptoms to support that opinion. [Id.] Additionally, the ALJ determined that plaintiff's orthopedic issues would not cause her to miss that amount of work every month. [Id.]

Plaintiff contends that in March 2016 alone, as reflected in the record, she would have missed work on more than four days. [JS at 9 (citing AR at 1328, 1331, 1358).] She states that the ALJ "must do more than offer his conclusions . . . [and] must set forth his own interpretations and explain why they, rather than the doctors' are correct." [Id. (citations omitted).]

Defendant, again, re-states the ALJ's opinion (that Dr. Moeller-Bertram's opinion that plaintiff would miss more than four days of week per month was not supported by either plaintiff's orthopedic or allergy treatment records). [JS at 13.] Defendant also states that although plaintiff had allergy issues in March 2016, "her hospitalization for asthma from March 30 to April 6, 2016, . . . was not 'evidence of consistent asthma symptoms throughout the adjudication period.'" [Id. (citing AR at 145-46, 148, 1328, 1331, 1358).]

Because the matter is being remanded for consideration of the issues discussed above,

and as consideration of those issues and the medical record as a whole could well impact the ALJ's consideration of the absenteeism issue, the Court will not further consider this issue herein.

### 5. Conclusion

The ALJ failed to provide specific and legitimate reasons for rejecting the opinions of treating physician Dr. Moeller-Bertram. Remand is warranted.

## C. WEIGHT GIVEN TO OTHER MEDICAL OPINIONS

Plaintiff notes that while the ALJ gave treating physician Dr. Moeller-Bertram's opinions "little weight," he gave the greatest weight to the state agency reviewing physician at the reconsideration level. [JS at 10 (citing AR at 147, 148).] She states that the opinion of a reviewing physician, "who has never examined the claimant, does not usually receive great weight." [Id. (citing 20 C.F.R. § 404.1527(c)(1)).] Plaintiff further observes that the ALJ failed to apply the appropriate factors for evaluating a medical opinion, _i.e._, the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. [Id. (citing 20 C.F.R. § 404.1527(c)).]

Defendant responds that plaintiff "erroneously believes that an ALJ cannot give great weight to opinions issued by State agency reviewing physicians . . . [which is] simply not true." [JS at 14 (citing cases upholding ALJ decisions that relied on non-examining physicians' opinions to assess other opinion evidence and RFC).] Defendant does not address plaintiff's argument that the ALJ erred by failing to consider the appropriate factors for finding that a treating physician's opinion is not controlling.

As the Court determined above, the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of treating physician Dr. Moeller-Bertram. Furthermore, although the ALJ generally considered that Dr. Moeller-Bertram's opinion was inconsistent with other evidence in the record, as in Trevizo he failed to "consider other factors such as the length of the treating

relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." Trevizo, 871 F.3d at 676. On remand, the ALJ must "apply the appropriate factors in determining the extent to which [Dr. Moeller-Bertram's] opinion should be credited." Id. (holding that the failure to apply the appropriate factors "alone constitutes reversible error").

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinions of Dr. Moeller-Bertram, the ALJ on remand shall reassess the medical opinions of record, including the opinions of Dr. Moeller-Bertram. The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts or rejects. Next, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[8]

---

[8] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform her past relevant work as a home health aide, as a nurse aide, and as a retail department
(continued...)

## VII.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 2, 2019

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8](...continued)
manager. [AR at 148.]